ELENA C. GIARRATANO,

     Plaintiff,

vs.                          Case No. 8:10-CV-2531-T-27TGW

GRADY JUDD, Polk County Sheriff, et al.,

     Defendants.

_____/

## ORDER

BEFORE THE COURT are Defendants' motions to dismiss (Dkts. 27, 28), Plaintiff's responses in opposition (Dkts. 31, 35), and Plaintiff's motion to amend caption (Dkt. 30). Upon consideration, the motions to dismiss (Dkts. 27, 28) are GRANTED, and the motion to amend caption (Dkt. 30) is DENIED as moot.

### Background

This action stems from the arrest and involuntary commitment of Giarratano under the Florida Mental Health Act, Fla. Stat. § 394.451, *et seq.*, also known as the Baker Act. On November 11, 2009, Giarratano was arrested by several deputies of the Polk County Sheriff's Department. She alleges that during the course of the arrest, the deputies assaulted and battered her by forcibly taking her cell phone, jabbing two fingers into her chest, twisting her arms behind her back, tightly handcuffing her, dragging her across the lawn, and shoving her into the back seat of a police car. She alleges that she began to hyperventilate and suffered from an anxiety attack. After approximately one hour, she was transported to Lakeland Regional Medical Center ("LRMC").

Upon arrival, emergency medical services technicians informed her that they needed to "take her vitals." They placed a blood pressure cuff on her arm, which caused her great pain due to a recent

surgery. At one point, Giarratano leaned over. The technicians yelled her name and pinched her twice on the thigh, before stating, "[s]he's all right!" The pinches caused a hematoma to develop, which remained on her thigh for several months.

At approximately 6:00 p.m. on November 11, Giarratano was taken to a holding area in LRMC's Psychiatric Unit, where she remained until she was admitted to the hospital several hours later. Dr. Landreth met with her the following morning and informed her that she wanted to order a brain scan. Giarratano refused all psychiatric treatment.

Giarratano met with a social worker, who stated, "[t]here seems to be a rash of Baker Acts, by Polk County Sheriff's Department!" Later, another social worker agreed to arrange for her discharge and release.

On November 13, Giarratano received her discharge papers from a hospital staff member. Upon reading that she had been diagnosed with bi-polar disorder, Giarratano refused to sign the paper. The staff member scratched out the diagnosis, and Giarratano was released at 2:00 p.m.

Giarratano commenced this *pro se*[1] action against the Sheriff of Polk County in his official and individual capacities, the Director of the Emergency Medical Services Unit of the Polk County Public Safety Department ("EMS") in his official and individual capacities, LRMC, and Dr. Landreth.[2] She sues all Defendants under 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth, and Fourteenth Amendments. She further alleges that Defendants violated § 1983 by engaging in several torts, including assault, battery, false arrest, false imprisonment, abuse of process, intentional infliction of emotional distress, and neglecting to prevent harm. Defendants Landreth, LRMC, and

---

[1] Giarratano appears be a member of the New York bar. (Am. Compl. ¶ 97(g); *see also* Dkt. 27-1 at 23).

[2] In addition to the named Defendants, Giarratano identified several deputies and EMS technicians. These individuals were not listed in the caption of the complaint, as required by Fed. R. Civ. P. 10(a), and Giarratano never obtained summonses for them. The deputies and EMS technicians therefore are not parties to this action.

Judd moved to dismiss, arguing that Giarratano failed to state a cause of action. Although the EMS Director has not been served with process, 28 U.S.C. § 1915(e)(2)(B)(ii) requires a determination of whether Giarratano stated a cause of action against him.

## Standard

A complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth–legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 710.

## Discussion

### Official capacity liability under § 1983

"Official capacity claims are tantamount to a suit against the governmental entity involved, here the Sheriff's Office" and EMS Unit. *Jones v. Cannon*, 174 F.3d 1271, 1293 n.15 (11th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). "A governmental entity is not liable under § 1983, merely as a matter of *respondeat superior*, for constitutional injuries inflicted

by its employees." *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999). Giarratano's constitutional claims against the Sheriff and EMS Director, which are premised solely on a theory of respondeat superior liability, therefore fail as a matter of law.

A governmental entity is only liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The amended complaint is devoid of facts that would support a plausible inference that a policy or custom of the Sheriff or EMS Director was the "moving force" behind any alleged constitutional violations. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). The social worker's reference to a "rash of Baker Acts by Polk County Sheriff's Department" has no probative value, as the statement fails to establish that any involuntary commitment was in violation of the Constitution. To the extent Giarratano relies on her own experience, her argument is rejected because "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Giarratano therefore failed to state § 1983 claims against the Sheriff and the EMS Director in their official capacities.

**Personal liability under § 1983**

"A supervisor can be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011). "A causal connection can be established if a supervisor has the ability to prevent or stop a known constitutional violation by exercising his supervisory authority and he fails to do so." *Id.* There are no allegations that the Sheriff or EMS Director personally participated in any of the alleged constitutional violations. Nor has Giarratano alleged sufficient facts to show a causal connection

4

between the actions of the Sheriff or EMS Director and the alleged constitutional violations of their subordinates. Accordingly, Giarratano has not stated § 1983 claims against the Sheriff and the EMS Director in their personal capacities.

**Liability of LRMC and Dr. Landreth under § 1983**

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Private parties such as LRMC and Dr. Landreth will only be considered 'state actors' for purposes of § 1983 upon satisfying the "public function test, the state compulsion test, [or] the nexus/joint action test." *Id.* Giarratano has not alleged facts that would arguably show that LRMC or Dr. Landreth were state actors under any of these tests. *See id.* at 1130-32 (applying the three tests and holding that private hospital which received patient involuntarily committed under Georgia Mental Health Code was not a state actor).[3]

The primary argument in Giarratano's opposition brief is that LRMC and Dr. Landreth acted as "agents of Defendant Polk County Sheriff." (Dkt. 31 at 2). The amended complaint, however, is devoid of allegations to support such a contention. Further, Giarratano has not alleged any facts showing that LRMC or Dr. Landreth acted pursuant to an official policy or custom of the Polk County Sheriff, which is necessary to transform the actions of a governmental entity's agent into state action. *See Patrick v. Floyd Med. Center*, 201 F.3d 1313, 1316-17 (11th Cir. 2000). Giarratano therefore failed to state a cause of action under § 1983 against LRMC or Dr. Landreth.[4]

---

[3] *Burch v. Apalachee Community Mental Health Services, Inc.*, 840 F.2d 797 (11th Cir. 1988) (en banc), *aff'd, Zinermon v. Burch*, 494 U.S. 113 (1990), is distinguishable for the reasons stated in *Harvey*, 949 F.2d at 1131-32.

[4] To the extent Giarratano alleges that LRMC is liable under the doctrine of respondeat superior, her claim fails for the same reason as her official capacity claims. "A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Harvey*, 949 F.2d at 1129. Therefore, "the hospital cannot be faulted for the conduct

**Conspiracy to violate constitutional rights**

"To prevail on a § 1983 conspiracy claim a plaintiff must show that an agreement between two or more people (at least one of whom is a state actor) to violate his constitutional rights resulted in an actual violation of those rights." *Am. Fed'n of Labor*, 637 F.3d at 1191. Giarratano has not pleaded sufficient facts to support a plausible inference of an agreement between any state actors and Dr. Landreth or LRMC to violate her constitutional rights. All she has offered are legal conclusions, which are patently insufficient to state a cause of action. *See Randall*, 610 F.3d at 709-10.

**Tort claims**

Although the amended complaint states that each of Giarratano's claims is for "violation of 42 U.S.C. § 1983," it appears that she may be attempting to plead common law tort claims, rather than constitutional violations. To the extent Giarratano is making such claims against the Sheriff and EMS Director, they must be dismissed. Fla. Stat. § 768.28(6)(a) provides:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . .

"Florida courts strictly construe this notice requirement and a claimant must allege in the complaint that he complied with the notice provisions of FLA. STAT. § 768.28(6)." *Albra v. City of Ft. Lauderdale*, 232 F. App'x 885, 888 (11th Cir. 2007) (citing *Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210, 212-13 (Fla. 1983)). "When a claimant fails to allege compliance with notice provisions, the complaint should be dismissed without prejudice and the plaintiff should be allowed leave to amend." *Id.*

---

of its employees." *Id.* at 1130.

Any common law tort claims against LRMC and Dr. Landreth are likewise due to be dismissed. Fla. Stat. 394.459(10) provides:

> Any person who acts in good faith in compliance with the provisions of this part is immune from civil or criminal liability for his or her actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility.

Giarratano has not alleged facts showing that Dr. Landreth or LRMC's employees failed to act in good faith compliance with the Baker Act. Giarratano's claim, as clarified in her opposition, revolves around the length of her confinement at LRMC, which began at 6:00 p.m. on November 11 and ended at 2:00 p.m. on November 13. Giarratano's 44 hour confinement was well within the 72 hour period allowed by Fla. Stat. § 394.463(2)(f). Based on the allegations in the amended complaint, LRMC and Dr. Landreth are entitled to immunity from tort claims related to Giarratano's admission, diagnosis, treatment, or discharge under the Baker Act.

Giarratano's claims against Dr. Landreth and LRMC fail for several other reasons. Giarratano's intentional infliction of emotional distress claim must be dismissed because she has not alleged conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985). Giarratano's claim that LRMC or Dr. Landreth violated her rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) is subject to dismissal because HIPAA does not create a private right of action and is not enforceable through § 1983. *See, e.g., Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006); *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010). To the extent Giarratano's claim is premised on allegations that LRMC or Dr. Landreth failed to give her certain prescription medication, she must comply with the statutory requirements for bringing a medical malpractice claim. *See* Fla. Stat. § 766.106(1)(a). Giarratano failed to allege that

she complied with the presuit investigation and notice requirements of Fla. Stat. Ch. 766. Nor does she dispute that she failed to comply. Any claim that LRMC's employees or Dr. Landreth failed to provide her with certain medications is therefore due to be dismissed.

## Conclusion

Accordingly, Defendants' motions to dismiss (Dkts. 27, 28) are GRANTED. The amended complaint is DISMISSED without prejudice. Because Giarratano has not stated a claim on which relief can be granted, this action is DISMISSED pursuant to 42 U.S.C. 1915(e)(2)(B)(ii). Plaintiff's motion to amend caption (Dkt. 30) is DENIED as moot because she has not stated a cause of action against the EMS Director, regardless of whether the proper governmental entity was identified. The clerk is directed to CLOSE this case.

DONE AND ORDERED this __9th__ day of April, 2012.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of record
Unrepresented parties